## REINSTATEMENT OF MEMBER OF A MUTUAL INSURANCE COMPANY.

Common Pleas Court of Hamilton County.

FRANCES E. BECKEL v. THE OHIO NATIONAL LIFE INSURANCE COMPANY ET AL.

Decided, December, 1913.

*Life Insurance—Conditions for Restoration of Members in Mutual Insurance Companies—Effect of Request of All Parties for an Instructed Verdict.*

1. When in an action for money only all parties request an instructed verdict, such conduct is a submission of the entire cause, law and fact, to the court; and the court then may on request of all parties dismiss the jury and consider the cause on submission and its finding will take the place of the ·verdict of the jury.
2. In a mutual insurance company where the board of trustees has power to restore benefits to a member whose policy has been canceled by imposing conditions, and where the condition imposed is that, if such a member pass a successful medical examination— Now if such a member under orders from such a board both to him and the company's regular medical examiner pass such an examination in the opinion of that physician, and the report of such examination is sent to the board—that member is at once reinstated, and it is not necessary for any further action by that board in the absence of any direct stipulation to the contrary.
3. The general powers of an afficer of a mutual insurance company will not give him the power to perform any act hostile to one or more of its members requiring discretion; and when such a company reserves the right to adopt either of two methods to replenish its mortuary fund such power is in its board of trustees and can not be delegated.

For statement see opinion.

*G. F. Osler* and *Nelson & Hickenlooper,* for plaintiff, offered:

Assessments must in fact be made by the proper power, but in addition every prerequisite to its validity must be complied with.    American Mutual Aid Society v. Helborn, 85

Ky., 1; Thomas v. Whallen, 31 Barb. (N. Y.), 172, 177; American Ins. Co. v. Schmidt, 19 Ia., 502; Pacific Mutual Ins. Co. v. Guse, 49 Mo., 329, 332.

Regularity must be affirmatively shown. No presumption of regularity. American Mutual Aid Society v. Helborn, 85 Ky., 1; Schea v. Masonic Benefit Assn., 160 Mass., 289, 293; Atlantic Mutual Ins. Co. v. Fitzpatrick, 2 Gray, 279, 281.

Assessments must be valid. If not, failure to pay is not a forfeiture. American Mutual Aid Society v. Helborn, 85 Ky., 1; Chicago Guarantee Fund Life Society v. Wilson, 91 Ill. App., 667-670.

Burden on defendant company to prove assessments valid. Murphy v. Mutual Reserve Fund Life Ass'n, 114 Fed., 404; Steward v. Grand Lodge, 100 Tenn., 267.

Assessments must be made by board of trustees and can not be delegated. Insurance Co. v. Chase, 56 N. H., 341-346; Dial v. Life Ass'n, 29 S. C., 560, 575 and 582; Phoenix Mutual Life Ins. Co. v. Bowersox, 6 O. C. C., 1.

A rule of law generally recognized is, that corporate power must be exercised through the board. 2 Thompson on Corporations, 2d Ed., Sections 1065, 1203, 1204 and 1205; Bradford Belting Co. v. Gibson, 68 Ohio St., 442; General Code of Ohio, Section 8660.

Waiver of forfeiture by course of dealing, by company. Security Life Indemnity Co. v. Underwood, 150 S. W., 293. Syllabus 3 and 4, items 3 and 4; Kenyon v. National Life, 57 New York Supp., 60; Jones v. Preferred Banker's Life (Mich.), 79 N. W., 204; and parts of the contract, policy and membership.

*Bettinger, Guckenberger, Schmitt & Kreis,* for defendant, offered:

An assessment will be presumed to be necessary. Crandall v. Farmers' Mutual Ins. Ass'n, 8 N. P. (Old Series), 632, bottom of page 635, 1st column.

Section 9428 of the General Code provides with respect to mutual associations such as this was that ''such associations

by their regulations or by-laws may provide for:   &ast;  &ast;  &ast;
4.   The duties and compensation of officers.''

By-law No. 5 of the association provided as follows:

''They (the board of trustees) shall elect or appoint a general manager of the association and may enter into such contract as they may deem proper with such general manager whereby he shall undertake the management of, and generally manage and conduct, the public business and the office business of the association, in all its details and be responsible therefor.''

Acting under this authority the board of trustees elected B. F. Coan general manager, and on March 15, 1892, entered into a contract with him to cover a period of fifteen years, and which at its expiration was renewed for a period of ten years and which provided among other things as follows:

''and his duties as such general manager are to generally manage and direct all the ordinary business of said association.''

And further:

''He shall see that all rules and regulations governing the relations between the association and its members are faithfully carried out.''

We submit that one of the ordinary matters of business of the association was to pay death losses out of the mortuary fund, and to keep up that fund from the proceeds of regular premiums and extra assessments. Fee v. National Masonic Ass'n, 110 Ia., 271, 275; Dial v. Life Ass'n, 29 S. C., 560.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

We maintain that if the by-laws are held to be silent as to who should determine the success of the examination, this section with reference to original applications applies, so that before an applicant for reinstatement can be held to have passed a successful examination, he must have been recommended by the medical examiner and approved by the proper officer of the company, who, in the case at bar, was Mr. Coan, by virtue

of his authority as president and general manager.    Graveson
v. Cincinnati Life Association, 8 C. C., 171.


DICKSON, J.

The plaintiff, a daughter of the insured and as his assignee,
and also as administratrix of his estate, pleads performance
of all conditions in a contract of insurance in a mutual life
insurance company (the Ohio Mutual Life Association Co.),
except proofs of death which were waived.

The defense made by the defendant, as the successor of that
mutual company, is a forfeiture, because the intestate insured
failed to pay certain extra mortuary calls and hence the risk
was not in force at the time of the consolidation between the
defendant company and the mutual company, viz., May 15, 1911.

To this new matter the plaintiff further pleads a denial of
any forfeiture and further claims if there were, there was a
restoration, a reinstatement—all in accord with the contract
between the insurer and the insured, which contract was one of
policy and membership combined.

At the conclusion of all the evidence each side requested an
instructed verdict.    Thus all questions were before the court.
By consent the jury was discharged and in lieu of a verdict
the further consideration of all points was, after arguments
and briefs, duly submitted to the court.

It is admitted that the decedent did not pay two certain extra
mortuary calls, and that he was notified that his policy had
been canceled.

It is not disputed that after this notice he was neither
treated nor considered as a member up to the time of his death.
July 16, 1911.

We thus meet directly the validity of the reinstatement and
the mortuary calls.

By-law 28, after stating what will work a forfeiture of mem-
bership, including a failure to pay mortuary calls, provides:

"But the board of trustees shall have power to provide for
restoring benefits under such member's certificate or certificates

by such forms and methods as may by the board be determined. * * *''

After the failure to pay those two calls the insured requested the board to restore his benefits under his contract and it by resolution answered:

"In the matter of the lapse of policy certificate of Mr. C. J. Norton, it was ordered that the policy remain canceled unless he pass a successful medical examination."

Thereafter within a reasonable time the insured and the company's medical examiner were notified of this action by the board and the insured was examined by this medical examiner who reported to the board in writing upon the insured's original application blank, as follows:

"Cincinnati, May 11, 1911.
"I have this day by direction of the Ohio Mutual Life Ins. Co. (the association's new name) examined Mr. Chas. J. Norton owing to his policy having been lapsed. I find him in good physical condition, his age taken into consideration.
"Signed.   JNO. C. KUNZ,
"Med. Examiner."

This report though it reached the company never reached the board, was kept from it by the president and general manager, who in person notified the insured that he would not be reinstated. The insured was an old man, had been a member for many years and the board knew his age.

It is clear from this report that he passed a successful examination.

The only question here is, was the report of the medical examiner self acting, or was it necessary for the board to act on it?

The board alone had the right to restore, reinstate. The insured had met its condition, had complied with its forms and methods. This board knew the case except expert medical knowledge. It as to this science had a right to rely upon its regular medical examiner, naturally friendly to the company and hostile to the insured, and let him perform the final act.

Any attempted interference thereafter by any officer did not jeopardize the insured's rights.

The court is of the opinion that that medical report completed the restoration and it was not necessary for the board to formally act, because with the condition fulfilled the board itself could not have rescinded its own act.

If this holding be the law it is not necessary to pass upon the validity of the calls. But because there might be one who might hold that the board should have taken some formal action and this want be fatal, the court will consider the calls.

The insured's contract policy and membership combined, provided for the payment of quarterly premiums and also for extra mortuary calls when needed to provide for unexpected death losses. Early in 1911 it was necessary to make two extra mortuary calls. These are the calls the insured failed to pay.

To provide for unexpected death losses the insured's contract, Section 20, Amendment No. 2, By-laws, says:

"Provided that if the actual mortality experience of the association shall at any time exceed the expected rate, so that the mortuary fund shall be insufficient to meet the death losses, 'n every such case, the deficiency in the mortuary fund shall be made good by an extra mortuary call, or by an increase of regular call to the rate for the then age of the members as per annexed table."

We may assume in the absence of testimony to the contrary, that the necessities existed compelling causes for these extra calls. We naturally then ask who had the right and in whom thus was the duty to decide in each instance whether the mortuary fund should be made good by an extra mortuary call or by an increase of the regular call to the rate for the then age of the members. The president and general manager—one person here—exercised this discretion. Had he that right? Under the law (the by-laws of the insuring company) this officer's broadest powers were—

"and his duties as such general manager are to generally manage and direct all the ordinary business of said associa-

tion. * * * He shall see that all rules and regulations governing the relations between the association and its members are faithfully carried out.''

In short, his duties were to see that all rules and regulations were faithfully carried out—thus an executive officer—and to generally in a general way manage and direct all the ordinary business of the company; i, e., details, as an agent. Certainly the power to exercise discretion as to the fundamental rights of members was not in this officer, and could not be vested in an employee of any mutual company.

There was no power in any officer to pass upon that medical examiner's report and refuse reinstatement. The power to exercise a choice between two distinct methods of replenishing the mortuary fund is organic, fundamental, vital, and was not and could not be delegated to an employee.

The plaintiff was not qualified as the assignee, hence the judgment will be for her as the administratrix on her cross-petition for the amount prayed for.